THE PEOPLE OF THE STATE OF NEW YORK ex rel. ROBERT S. BREWSTER, Relator, *v.* JAMES A. WENDELL, as Comptroller of the State of New York, Respondent.

Third Department, May 4, 1921.

**Taxation — income tax — authority of Comptroller to make rules and regulations — increase in value of stock which is given away is no part of taxable income — Tax Law, §§ 353, 355, 359 and 383 construed — " other disposition of property " as used in Tax Law, § 353, defined — right of taxpayer to sell property at loss to avoid tax.**

Section 383 of the Tax Law does not attempt to vest legislative powers in the Comptroller; it simply authorizes him " to make such rules and regulations * * * as it [he] may deem necessary to enforce the provisions of this article."

Section 353 of the Tax Law relating to income tax, which provides the basis " for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property," must be read in connection with sections 354 and 355 and the phrase " other disposition of property " construed to relate to the methods of disposition provided for in the subsequent sections, dealing with exchanges and with reorganization, merger or consolidation of corporations, or with " dealings in property " as contained in section 359, and not to include a gift of property.

It is the income derived and not the increase in value of property that is made subject to tax, and accordingly the increase in value of corporate

stock which the relator gave away cannot be considered as a part of his taxable income.

*It seems*, that a property owner may sell his property at any price, however inadequate, and charge off the resulting loss, and that he has the right to do this even though for the purpose of avoiding payment of taxes, where he acts in good faith in parting with title.

KILEY, J., dissents.

CERTIORARI issued out of the Supreme Court and attested on the 21st day of January, 1921, directed to James A. Wendell, as Comptroller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Albany all and singular the proceedings had in adjusting an account for income taxes for the taxable year 1919, against the relator under article 16 of the Tax Law, and in revising said account.

*Larkin, Rathbone & Perry* [*Hersey Egginton* and *Francis C. Nickerson* of counsel], for the relator.

*Murray, Prentice & Aldrich* [*George Welwood Murray* and *Harrison Tweed* of counsel], *amici curiæ.*

*Charles D. Newton, Attorney-General* [*James S. Y. Ivins, Deputy Attorney-General,* of counsel], for the respondent.

WOODWARD, J.:

The relator on January 1, 1919, owned certain stocks and bonds of the fair market value of $70,000. On the 1st of May, 1919, the relator gave these securities away. It does not appear from the record whether these stocks were given for charitable purposes or not, and no question arises under the exceptions in reference to such gifts. At the time the gift was made the securities concededly had a fair market value of $72,000. The relator did not include the increment in value upon them in the body of his return, nor did he pay a tax thereon, but he disclosed the facts as above stated in a rider attached to the return, claiming in such rider that he was not liable to taxation under the statute, and that the regulation of the State Comptroller attempting to reach this result was unlawful and void. The Comptroller has made an assessment against the relator upon the sum of $2,000, the conceded

increase in value at the time of the gift, and certiorari is
brought to review this determination. By the provisions of
chapter 627 of the Laws of 1919, the State of New York has
provided for the levying and collection of an income tax upon
individuals, and section 383 of the Tax Law, as added by
the above statute, provides that " the Comptroller is hereby
authorized to make such rules and regulations, and to require
such facts and information to be reported, as it [he] may deem
necessary to enforce the provisions of this article; " and the
practical question here is whether the Comptroller, in making
article 91 of the regulations, has exceeded the authority vested
in him by the Legislature or, to put the matter in another form,
whether he has correctly construed the provisions of the act
here under consideration. The section above cited does not
attempt to vest legislative powers in the Comptroller; it is
simply that he shall have power " to make such rules and regu-
lations  *  *  *  as it [he] may deem necessary to enforce
the provisions of this article," and if the article itself does not
authorize the tax which has been levied then no language of
the Comptroller's regulations can accomplish this result. We
approach this question then from the standpoint of the statute,
not the language used by the Comptroller, and with the rule in
mind that " ' a tax cannot be imposed without clear and express
words for that purpose.' " ( *United States* v. *Isham,* 17 Wall.
[84 U. S.] 496, 504; *Gould* v. *Gould,* 245 U. S. 151, 153, and
authorities there cited; *Crocker* v. *Malley,* 249 id. 223, 233,
and authorities there cited.) " In the interpretation of
statutes levying taxes," say the court in *Gould* v. *Gould (supra),*
" it is the established rule not to extend their provisions, by
implication, beyond the clear import of the language used,
or to enlarge their operations so as to embrace matters not
specifically pointed out. In case of doubt they are construed
most strongly against the government, and in favor of the
citizen," and it was held that money paid by a divorced
husband to his wife for alimony was not income under the
Federal Income Tax Act of October 3, 1913 (38 U. S. Stat. at
Large, 114, chap. 16; Id. 166, § 2).

Chapter 627 of the Laws of 1919 adds article 16 to the Tax
Law, which contains the sections of the Tax Law herein set
forth. Section 351 declares that " a tax is hereby imposed

upon every resident of the State, which tax shall be levied, collected and paid annually upon and with respect to his entire net income as . herein defined," at rates prescribed. Section 353 provides that " for the purpose of ascertaining the *gain derived* or *loss sustained* from the sale or other disposition of property * * * the basis shall be first, in case of property acquired before January first, nineteen hundred and nineteen, the fair market price or value of such property, as of January first, nineteen hundred and nineteen, and, second, in case of property acquired on or after that date, the cost thereof; or the inventory value, if the inventory is made in accordance with this article." It is to be noticed that the language of the statute is that ." for the purpose of ascertaining," not the value, but the " gain derived * * * from the sale or other disposition of property," the market value as of January 1, 1919, is to be taken as the basis, and the following section provides that " when property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; but when in connection with the reorganization, merger or consolidation of a corporation a taxpayer receives, in place of stock or securities owned by him, new stock or securities of no greater aggregate par or face value, no gain or loss shall be deemed to occur from the exchange, and the new stock or securities received shall be treated as taking the place of the stock, securities or property exchanged." The next section provides, in continuation of the subject of the two previous sections, that " when in the case of any such reorganization, merger or consolidation the aggregate par or face value of the new stock or securities received is in excess of the aggregate par or face value of the stocks or securities exchanged, a like amount in par or face value of the new stock or securities received shall be treated as taking the place of the stock or securities exchanged, and the amount of the excess in par or face value shall be treated as a gain to the extent that the fair market value of the new stock or securities is greater than the cost of the stock or securities exchanged, if acquired on or after January first, nineteen hundred and nineteen, and its fair market price or value as of January

first, nineteen hundred and nineteen, if acquired before that date."

Obviously sections 353, 354 and 355 are to be read together and construed as defining income as required by section 351, and when we find in section 353 that " for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property " we are to understand " other disposition of property " to relate to the methods of disposition provided for in the subsequent sections, dealing with exchanges and with reorganizations, mergers or consolidations of corporations, or with " dealings in property " as contained in section 359.   In the latter section it is provided that " gross income " includes " gains, profits and income derived from * * * professions, vocations, trades, businesses, commerce, or sales, or dealings in property, * * * growing out of the ownership or use of or interest in such property."   The purpose of the statute is to levy a tax upon incomes *derived* from " professions, vocations, trades, businesses, commerce, or sales, or dealings in property," and the United States Supreme Court defines " income " as the " gain *derived from* capital, from labor, or from both combined." (*Doyle* v. *Mitchell Brothers Co.,* 247 U. S. 179, 185, and authority there cited.)   So long as property remains in the hands of its owner any increase in value is an increase of the capital; it is derived or realized as income only when the property is disposed of, and the method of establishing " the gain derived or loss sustained from the sale or other disposition of property " is set forth in sections 353, 354 and 355 of the Tax Law.   It is the deriving of the income, not the increase in value, that is made subject to the tax, and how it can be held that the relator, in giving away his property, derived an income subject to taxation from a sale or dealing in property or a sale or other disposition of property (§§ 359, 353) is not easy to understand.   There was no gain derived to the relator in giving away his property.   In law it was a loss of property; it was a taking out of his estate not only the capital, which was invested prior to 1919, but the increase in value which had followed, just as much as though a fire had destroyed the property represented by the securities and no insurance survived.   Suppose, for instance, the relator had sold the

property to the persons who received it instead of giving it to them, and that he had received for it the sum of $70,000, instead of its fair market value of $72,000. Would any one pretend that the relator had derived an income from the transaction? Suppose, further, that he had sold the property for $68,000. Is there any doubt that he would be entitled to charge off the loss of $2,000 from the market value of January 1, 1919? He had a perfect right to sell the property at any price, however inadequate, and to charge off the resulting loss. He had a right to do this even though for the purpose of avoiding the payment of taxes ( *United States* v. *Isham,* 17 Wall. 496, 506), always assuming, of course, that he acted in good faith in parting with the title. The Comptroller in article 91 of his regulations says: " Gifts, whether charitable contributions or otherwise, constitute a disposition of property which may result in a profit or loss to be measured by the difference between the cost (or the value on January 1, 1919, if acquired prior thereto) and the value at the date of the gift; " and under the facts here presented it is difficult to understand why he might not, with equal propriety, have found that the gift resulted in a loss. If the property was worth $2,000 more than on the 1st day of January, 1919, and the relator gave this away, in connection with the capital fund, wherein did he fail to sustain a loss? He did not derive anything from the disposition of the property; he did not even receive the equivalent of its original value. He lost the $2,000 as fully and as completely as though he had sold the property for $70,000, its primary value, and there can be no possible question that he would be free from the obligation to pay a tax upon a value which found no expression in the purchase price; he would not have derived any income from the sale of the property, and the statute makes no provision for a tax except upon the " net income as herein defined " (§ 351), and net income " means the gross income of a taxpayer less the deductions allowed by this article " (§ 357), while gross income " includes gains, profits and income derived from * * * sales, or dealings in property " (§ 359), and, of course, cannot include losses through inadequate prices or gifts of property. To give it the construction asserted by the Comptroller is to extend the provisions of the act by implication

" beyond the clear import of the language used " and to enlarge its " operations so as to embrace matters not specifically pointed out," in violation of the well-established rule cited.

The determination of the Comptroller should be reversed and the tax adjusted upon the basis of the relator's contention.

All concur, except KILEY, J., dissenting.

Determination of the Comptroller reversed, with fifty dollars costs and disbursements, and the matter remitted for disposition in accordance with the opinion.