Marshall, C. J.
 

 The first problem presented by this record relates to the law of negotiable instruments and may be solved by reference to the
 
 *162
 
 provisions of the Uniform Negotiable Instruments Act, Sections 8106 to 8230, inclusive, General Code. This instrument was originally a negotiable instrument, meeting all the requirements of the provisions of Sections 8106 to 8109, inclusive, General Code, but being payable to two joint payees, who were not partners, and neither having any authority to transfer the interest of the other, it was clearly subject to the provisions of Section 8137, General Code, which provides:
 

 “The indorsement must be an indorsement of the entire instrument. An indorsement which purports to transfer to the indorsee a part only of the amount payable * * * does not operate as a negotiation of the instrument.”
 

 The transfer of the instrument in the manner in which the same was transferred by Edgar, being in contravention of the plain provisions of that section, stripped the instrument of some of the qualities of a negotiable instrument and left it a nonnegotiable chose in action. It may be inquired at this point whether Section 8137 makes an attempted transfer in violation of its provisions an utterly void act. Our answer is that the word “negotiation,” as used in that section, is a technical term, and is used in a technical sense as the transfer of a negotiable instrument in due course. It is true that in Section 8135 it is provided that:
 

 “An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof.”
 

 This section being a part of the uniform act, all sections of which are
 
 in pari materia,
 
 it must necessarily refer to a negotiable instrument, and
 
 *163
 
 the holder of such an instrument, and no one can be such holder who does not measure up to all of the requirements of Sections 8157 to 8164, inclusive, General Code. By virtue of the provisions of Section 8160, General Code, a person is not a holder in due course who acquires title by unlawful means, and it must necessarily be considered unlawful if in contravention of the statutory provisions.
 

 If, therefore, it is attempted to transfer a negotiable instrument in such manner as to violate the provisions of Section 8137, General Code, it does not operate as a negotiation of a negotiable instrument. It does not follow, however, that the transfer of only a part of the amount payable is a void act, or that the transferee acquires nothing by the transaction. It cannot be doubted that any legislative attempt to deny the right of a holder of a part interest in a negotiable instrument to sell and transfer such interest would be unconstitutional. As a general rule, any person may sell and transfer property, or any interest therein, under the inherent power to make contracts, all of which is recognized by the letter and the spirit of Section 1 of the Ohio Bill of Rights. It is, of course, an exception to such general rule that the Legislature may limit such right on the ground of public policy, the best examples of which are champertous and usurious contracts, contracts in restraint of trade, and other agreements which need not be enumerated. It is likewise within the limits of legislative power to give to promissory notes and bills of exchange the attribute of negotiability, to place limitations thereon, and to take the same
 
 *164
 
 away under certain prescribed conditions. The Legislature would not, however, have the power to take away from a promissory note the force and effect of a contract, if it possesses all of the formal requisites and essential attributes of a contract. In the instant case, after the transfer of the part interest in the note, it still had all of the character and quality of a contract, and as such it could lawfully be transferred. We have no difficulty, therefore, in reaching the conclusion that Mayer and the subsequent transferees were holders of a nonnegotiable chose in action.
 

 At this new starting point, and based upon the foregoing conclusions, we will proceed to a consideration of the next legal question, and to a determination of the respective rights and claims of Edgar and the Sixth Real Estate Security Company in this chose in action. It was not quite clear what theory counsel for Edgar entertained in disregarding the notes and bringing action to foreclose the mortgage. It is well settled by the former adjudications of this court that a mortgage is not property separate and distinct from the note which it secures, but that, on the other hand, the mortgage security is an incident of the debt which it is given to secure, and, in the absence of a specific agreement to the contrary, passes to the assignee or transferee of such debt. These principles are settled by the following cases:
 
 Paine
 
 v.
 
 French, 4
 
 Ohio, 318,
 
 Executors of Swartz
 
 v.
 
 Leist,
 
 13 Ohio St., 419, and
 
 Allen
 
 v.
 
 First Nat. Bank of Xenia,
 
 23 Ohio St., 97. This entire problem must therefore be solved by determining which of these parties has the better title to this nonnegotiable
 
 *165
 
 chose in action, and this question must he determined by principles of law having no relation whatever to the law of negotiable instruments. If the fraud had arisen out of the transaction between the maker and the original payee of the note, the law of negotiable instruments would apply, and the Sixth Real Estate Security Company not being a holder in due course, the maker would have a valid defense. In that event the maker would also have a valid defense against Edgar, so that neither party could recover. On the other hand, if the maker were insolvent, and the Sixth Real Estate Security Company were seeking personal judgment against Edgar as an indorser, Edgar would likewise have a valid defense on the ground that the real estate company is not a holder in due course. Neither of the foregoing hypotheses is true, but, on the contrary, the maker of the note is perfectly solvent, makes no defense to the note, and has paid the amount of the same into court. The only question remaining for determination is the rights of the respective parties in that fund. This determination must be made accoi'ding to well-settled principles of equity, without regard to the rules and principles of commercial paper. The situation is exactly the same as though tangible property were involved instead of a chose in action.
 

 Edgar was induced by fraud to part with' his title to this chose in action and could undoubtedly have recovered the title from Mayer, before Mayer parted with it, and could have recovered the title from any other person who acquired it with knowledge of the fraud; but it is conceded in this case
 
 *166
 
 that the Sixth Real Estate Security Company acquired title without notice or knowledge of fraud or even circumstances which would have put that company upon inquiry. The situation is the same as though Edgar, admitting that the real estate company was not a party to the fraud, but, on the contrary, had acquired the same for a valuable consideration without notice or knowledge thereof, had brought an action against the real estate company to recover the property on the ground that his transfer of it to Mayer was induced by fraud. It being admitted that Edgar indorsed the note, and delivered the note and mortgage to Mayer, that he thereby clothed Mayer with apparent indicia of title, with power to further dispose of the note and mortgage, and the same having in fact been disposed of to an innocent purchaser for a valuable consideration, Edgar is, by well-settled principles of equity, estopped from setting up against such second assignee the fact that the title of Mayer was not absolutely perfect. Edgar, by his own affirmative act, conferred the apparent title and ownership upon Mayer, and it was upon the faith of this transfer that Kaufman and the real ’estate company purchased the same for a valuable consideration. Edgar is thereby precluded from asserting his real title. Edgar, having been defrauded, seeks to be made whole at the expense of the Sixth Real Estate Security Company, an innocent party, not at the expense of Mayer, the real wrongdoer. This case is therefore governed by the legal maxim that, where one of two innocent persons must sustain a loss from the fraud of a third, such loss must fall upon the one, if
 
 *167
 
 either, whose act has enabled such fraud to be committed. The instant case is exactly parallel to the case of
 
 Combes
 
 v.
 
 Chandler,
 
 33 Ohio St., 178, and upon the authority of that case, as well as upon principle, the judgment of the Court of Appeals must be affirmed.
 

 Judgment affirmed.
 

 Wanamaker, Robinson, Jones, Matthias, Day and Allen, JJ., concur.