## HOPPLE v. THE CLEVELAND DISCOUNT CO.

*Corporations—Interim certificates—Transfer and title—Innocent purchaser acquires title regardless of original transferee's faith, when—Form of transfer immaterial where owner intended to pass title—Indorsement and delivery to transferee acting in bad faith, not void—Innocent purchaser's title to certificates unaffected by receipt for securities, when—Title transferable as choses in action or personalty—Bona fide purchaser takes title free from collateral equities—Interim certificates are negotiable instruments, when—Title transferred by blank endorsement and delivery—Cannot be rescinded after sale to innocent purchaser.*

1. Where interim certificates of discount company were indorsed by owner and delivered to another, who sold them to innocent purchaser for value, innocent purchaser acquired title, regardless of bad faith of original transferee in procuring certificates.

2. Where owner of interim certificates issued by discount company intended to pass title to them, by indorsement and delivery, form of transfer was immaterial.

3. Indorsement and delivery of discount company's interim certificates by owner to transferee acting in bad faith *held* not void.

4. Acknowledgment of receipt of securities represented by interim certificates of discount company at time when discount company retained possession of securities, made in conformity with regular methods pursued by holders of securities and brokers, *held* not to affect title of innocent purchaser for value of interim certificates from transferee of holder.

5. Title to interim certificates representing securities *held* subject to transfer by indorsement and delivery, whether treated as intangible choses in action, or as personal property.

6. Where an instrument is in nature of a chose in action; *bona fide* purchaser takes it free from collateral equities, notwithstanding fact that he may be subject to defenses by obligor to which original owner was subject.

7. Interim certificates, obligating discount company to deliver securities represented thereby to another, or her order, indicate that they were negotiable instruments, since words "or order" give holder right to transfer same to third persons, who may enforce them against first owner of paper.

8. Indorsements in blank by payee of interim certificates, and delivery thereof to another for valuable consideration, was sufficient to transfer title to certificates, which could not be rescinded after transferee sold certificates to innocent purchaser for value.

(Decided February 7, 1927.)

APPEAL:  Court of Appeals for Cuyahoga county.

Messrs. Thompson, Hine & Flory, for plaintiff.
Messrs. Squire, Sanders & Dempsey, for defendant.

SULLIVAN, J.   This cause comes into this court both on appeal and error, the error case being entitled the A. & J. Frank Company v. Sarah E. Saylor et al., and on consideration the error proceedings are dismissed and the appeal heard, as the law provides, de novo.

The A. & J. Frank Company is a corporation doing a brokerage business, and filed exceptions to the report of the special master herein, and to the order of the common pleas court of Cuyahoga county confirming the report and allowing the claim of Sarah E. Saylor against the Cleveland Discount Company, and rejecting the claim of the A. & J. Frank Corporation as to the title and ownership of two interim certificates issued by the Cleveland Discount Company, upon surrender of which properly indorsed the Cleveland Discount Company was

to deliver to Sarah E. Saylor, or order, $2,000 par value first mortgage 6 per cent. collateral trust bonds of the Cleveland Discount Company.

It appears that on or about July 10, 1924, Sarah E. Saylor delivered to one W. Manning the certificates, by indorsing her name on the printed indorsement form appearing on these certificates, as follows:

"— hereby acknowledge receipt from the Cleveland Discount Company of the securities represented by the within certificate, dated the 14th day of October, 1924.

"[Signed] Sarah E. Saylor.
"In the presence of W. Manning."

After the indorsement is the following:

"This receipt must be dated.

"Subscribed to before me this 14th day of October, 1924.

"[Signed] A. C. Blumenthal,
"[Notarial Seal.]        N. P.——D. C."

It is beyond controversy that the signature of Mrs. Saylor is genuine, and that upon executing the assignment and transfer she delivered to Manning the two interim certificates. Subsequently Manning communicated with the A. & J. Frank Company, as brokers, and, receiving a quotation as to the market value of the certificates, accepted a bid at 22, and thereupon transmitted the certificates to the A. & J. Frank Company, who, upon receipt of the same, paid therefor the sum of $660. Later the brokerage company resold the certificates to Denman & Co., and the latter sold to Werner & Co., who, on November 13, 1924, presented them for transfer, whereupon they were notified that the

transfer had been stopped. Thereafter the certificates were returned to the A. & J. Frank Company, because of the guaranty of the indorsements, and thereafter the A. & J. Frank Company remained in possession of the certificates.

It appears that the refusal of the discount company to transfer the certificates to the holder was based upon a telegraphic letter to it—based upon the following excerpt therefrom:

"Interim certificates Nos. 1978, 2153, belonging to Sarah E. Saylor. As there was a man here that gave his name as W. Manning, and persuaded me to sign my certificates over to him, and if I was not satisfied the next day, I should just let him know and he would return them, but I find no such man," etc.

While it is quite clear that the Manning transaction with Mrs. Saylor for the transfer of the certificates was not above reproach, yet it is without controversy that the A. & J. Frank Company were innocent parties to the transaction, and acted wholly in accordance with universal rules applying to the transfer of instruments of writing, known as interim certificates.

That Mrs. Saylor passed title by indorsement, delivery, and consideration is settled by the record, especially considering the excerpt from the letter above quoted and dated July 11, 1924. There is also evidence in the record that the receivers of the Cleveland Discount Company, at least on one prior occasion, caused a transfer of interim certificates, and therefore gave recognition to an indorsement identical with that of the certificates in the case at bar.

It cannot be doubted, irrespective of bad faith

in the conduct of Manning, that as far as the rights of the A. & J. Frank Company are concerned title to the instruments passed by delivery, and that the assignment of the rights of Mrs. Saylor was legal as far as the A. & J. Frank Company was concerned, under the facts as they appear in the record.

Applicable in principle to the transaction at bar is the authority of our own Supreme Court in *Shanklin* v. *Bd. of Com'rs. of Madison County,* 21 Ohio St., 575, the first and second paragraphs of the syllabus of which we quote:

"(1) The liability of a county treasurer, incurred by his embezzlement of the public funds in his custody, is a sufficient consideration to support the assignment of a banker's certificate of deposit to the county, in reimbursement of the loss.

"(2) The transfer of such certificate by delivery, without indorsement, is a valid assignment, effectual to pass the property therein, if so intended; and the beneficial interest having vested thereby, its subsequent indorsement by the administrators of the assignor can only operate on the naked legal title, the transfer of which, being a barren possession in their hands, cannot prejudice his estate."

Under the record in this case there can be no question of the intention of Mrs. Saylor at the time of the transfer, and, while objection is made to the form of the transfer, we think it is immaterial, and, bearing out our views, we cite *Ruple* v. *Bindley,* 91 Pa., 296, wherein it is said:

"The form of the assignment is immaterial, so that there be a clearly expressed intention of an immediate transfer of the right to the assignee."

The most extreme claim that can be made in

regard to the transaction between Mrs. Saylor and Manning is that it is merely voidable, but the weight of authorities is that the transaction is not void. *Fountain* v. *Bigham,* 235 Pa., 35, 84 A., 131, Ann. Cas., 1913D, 1185; *Edgar* v. *Haines,* 109 Ohio St., 159, 141 N. E., 837, 38 A. L. R., 795.

It is claimed that the receipt above quoted, dated October 14, 1924, signed by Mrs. Saylor, acknowledges the receipt of the securities from the Cleveland Discount Company, when, as a matter of fact, the Cleveland Discount Company was then and thereafter itself in possession of the securities, and it is argued that this was sufficient to put the A. & J. Frank Company upon notice. Upon an examination of the record, however, we find that this indorsement was necessary to effect the purpose of transfer, and was in consonance with the regular methods pursued in the transaction of such business between holders of securities and brokers. Such an indorsement could in no manner be deceptive, because, if Mrs. Saylor had already received the securities, the transaction would be futile. There could be no other conclusion than that its only purpose was to secure the bonds by placing on record at the time of their receipt the original interim certificates, so that there would be conformity in the transaction to the record thereof in the books of the Cleveland Discount Company. It was the instrumentality which it is obvious the Cleveland Discount Company demanded in order to pass the securities to an assignee holding title, formulated apparently by the Cleveland Discount Company not only for its convenience, but that no error of identity or otherwise might be committed.

Whether the certificates be treated as intangible

choses in action or as personal property, the record is convincing that their nature was such that the title was subject to transfer. Where an instrument is of the nature of a chose in action, a *bona fide* purchaser takes it free from collateral equities, notwithstanding he may be subject to defenses by the obligor to which the original owner was subject.

We quote 1 Williston on Contracts, Section 447, as bearing upon this phase of the case:

"The rule in regard to latent equities has no importance, not only where negotiable paper is concerned, but where choses in -action having tangible form like policies of insurance, savings bank books, or nonnegotiable notes are in question. The delivery of the document will cut off the equity. If, therefore, the parties desire to put an obligation in a merchantable form, they can (if they wish) do so, and can do so without making the obligation negotiable. For such property, then, as an intangible chose in action, there seems little reason to prefer the assignee to a previously defrauded owner of the claim. Where the sale of property is a necessary function of commercial activity, it is socially desirable to protect the new purchaser at the expense of a former innocent victim; but the desirability of this policy seems limited to that class of property."

The principle laid down in the above authority makes applicable to the transaction at bar the law of personal property, and, regardless of the specific legal nature of the documents in question, they certainly have the attributes of personal property, and as such can be transferred by such conduct in law as indorsement and delivery, which characterizes the transaction in the instant case.

2 Pomeroy's Equity Jurisprudence (4th Ed.), Section 712, reads as follows:

"*Subsequent Assignee Obtaining the Legal Title may be Protected as a Bona Fide Purchaser.* In the discussions of the foregoing paragraphs, it has been constantly assumed that the assignee had acquired only an equitable title, in order that he might take subject to the equities subsisting in favor of a prior assignee or of a third person. If, in addition to his equitable interest conferred by the assignment, he has also obtained the *legal* title, or even if his situation is such that he has the best right to call for the legal title, then the doctrine of purchase for a valuable consideration and without notice may apply so as to protect him against all such outstanding equities. It should be constantly borne in mind that priority of time gives precedence of right among successive and conflicting equitable interests only when these equitable interests are *equal* in their nature or incidents. * * * These decisions should, on principle, apply to and protect the assignee of every other species of thing in action who has acquired the legal title."

This principle is also laid down in effect in our recent decision in the case of *Saba, Admr.,* v. *Cleveland Trust Co.*, 23 Ohio App., 163, 154 N. E., 799, and was approved by the Supreme Court by refusal to grant a motion to certify. An examination of the interim certificates shows that they bear the marks of negotiable instruments, and, even though such evidences of indebtedness are not specifically enumerated in the General Code of Ohio, these were so drawn that the Cleveland Discount Company obligated itself to deliver the securities to

146    Ohio Appellate Reports.

Hopple _v._ Clev. Discount Co.    '[25 Ohio

Sarah E. Saylor, or her order. These latter words are essentially characteristic of negotiable instruments, because the holder may transfer his right and title thereto to another. The very purpose of the words ''or order'' is that by the act of the original _bona fide_ holder third persons may succeed to the original rights, and could therefore enforce them similarly to the first owner of the title of the paper.

The form and substance of the certificates and the character of the indorsement itself clearly indicate that the contracting parties were adopting the principles of the law merchant. We think that Prof. Aigler, in 24 Columbia Law Review, 563, analyzes this element in the case at bar in such an illuminating manner that it is decisive of the question under discussion. We quote therefrom as follows:

''For purposes of this discussion there are, generally speaking, three types of documents: (1) Money instruments such as bills and notes; (2) property instruments like bills of lading, warehouse receipts, etc.; and (3) an intermediate class, of which the familiar interim receipt is an example, which, while not directly calling for the payment of money, does indirectly amount to that, and is treated in business circles as such. That the statute governs the first class cannot be doubted. While no authority directly in point is known to the writer, it is believed that the Negotiable Instruments Law would not be deemed to prevent the application to a bill of lading of those attributes of negotiability determined by decision or declared by statute to be properly applicable thereto. As suggested above, the enactment of the Uniform Act

in Georgia to-day would not, it is submitted, repeal by implication the Uniform Bills of Lading Act and other legislation of like character, assuming such statutes to be a part of the law of that state. As to the third class of instruments, such judicial opinion as has been expressed unfortunately appears to be to the effect that the statute applies. Perhaps this conclusion is inescapable, which it would be if the language of Section 1 (2), that an instrument to be negotiable 'must contain an unconditional promise or order to pay a sum certain in money,' is to be taken as laying down a broad, sweeping all inclusive requirement. If, however, it were to be concluded that property documents, like bills of lading, are not covered, then why should not the door be open also for exclusion of the intermediate class calling for something other than *money?* If the language of Section 1 (2), above quoted, were to be construed as indicating the type of paper intended to be covered by the statute, rather than as a sweeping requirement for all documents enjoying at least some of the common features of negotiability, the way would be clear, and it might be considered that outside the statute there may be a constant gradually developing custom or law of merchants which courts are free to recognize and apply.''

This being so, the indorsement in blank of Sarah E. Saylor, and delivery of the certificates for an adequate valuable consideration, was a sufficiency in law for the transfer of title to Manning, and, as a consequence, there was no power of rescission after the completion of the transaction by an innocent purchaser for value.

A case which is particularly applicable in our judgment to the facts in the case at bar, especially with respect to the question of fraud, the character of the instrument of writing in question, the transfer of title by indorsement in blank, and the innocence under the record of the third party, the A. & J. Frank Company, is found in the case of *Edgar* v. *Haines*, 109 Ohio St., 159, 141 N. E., 837, 38 A. L. R., 795, the three paragraphs of the syllabus of which we quote:

"(1) Where a promissory note is made payable to the order of two payees, who are not partners, and neither payee has authority to transfer the interest of the other, an assignment by one payee of his part interest in the note to a third party takes away the negotiable character of the instrument and renders it a nonnegotiable chose in action.

"(2) Such an assignment is not void, but operates as an assignment of the equitable interest of the assignor.

"(3) Where E transfers to M a nonnegotiable chose in action, which assignment is induced by the fraud of M, and afterwards M transfers the same to K, and K thereafter assigns the same to S, all of which transfers are by indorsement and delivery, and both K and S pay a valuable consideration therefor without notice or knowledge of the fraud of M, the equities of S are superior to those of E, and the situation is a proper one for the application of the legal maxim that, where one of two innocent persons must sustain a loss from the fraud of a third, such loss must fall upon the one, if either, whose act has enabled such fraud to be committed."

Holding these views we decree for the A. & J. Frank Company.

*Decree accordingly.*

LEVINE, P. J., concurs.

VICKERY, J., not participating.