WALLACE HUNTINGTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ANNIE HUNTINGTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 25806, 25807.   Promulgated March 14, 1929.

*Robert T. Jacob, Esq.,* for the petitioners.
*Albert S. Lisenby, Esq.,* for the respondent.

OPINION.

MILLIKEN: The parties have agreed that the sale by petitioners in the year 1921 to the Long-Bell Lumber Co. was an installment sale as that term is defined in section 212(d) and section 1208 of the

Revenue Act of 1926 and that petitioners properly reported on their tax returns the income arising in that year in such manner. Counsel for respondent also conceded that the gift to Roma was completed and, since the gift was made prior to the negotiations with the Long-Bell Lumber Co., that any gain made on the sale of the tract belonging to Roma should not be taxed to petitioner.

This brings us to the question whether petitioners are taxable on so much of the gain as arose from the sale of the two 100-acre tracts which they attempted to give to Jean and Frances. Counsel for respondent contends there was not a completed gift of the 100-acre tracts to Jean and Frances, because there was no conveyance of title to them and they had done nothing to reduce their tracts to possession. There is no disagreement between counsel on this phase of the case, because counsel for petitioners states in brief filed " we have not claimed that the gift of the real property was consummated." The good faith of petitioners is perfectly apparent and respondent makes no contention to the contrary. In fact, the question of income tax played no part either in the attempted making of the gifts or in the contract of assignment. All that petitioners desired was that their children should receive that part of the purchase price which represented the land they had attempted to give to them and which they had accomplished in so far as Roma was concerned.

This leaves for our consideration the sole question whether petitioners are taxable on so much of the gain arising from the sale as is represented in that part of the purchase price which they assigned to Jean and Frances.

At the outset we are met with the contention of respondent that section 3423 of Remington's Compiled Statutes of Washington (1922 Ed.) applies. That section reads:

The endorsement must be an endorsement of the entire instrument. An instrument, which purports to transfer to the endorsee a part only of the amount payable, or which purports to transfer the instrument to two or more endorsees severally, does not operate as a negotiation of the instrument.

It may be pointed out that it does not appear that the purchase money notes were negotiable. There is nothing in the record which describes these notes, except the agreement between petitioners and their children. They are there referred to as " notes." Whether they were payable to order or to bearer does not appear.

Assuming for the purpose of argument that the notes were negotiable, it does not appear that petitioners attempted to negotiate them or any interest therein. What they did was to assign an interest in each note to the children. This is not forbidden by the above section of the Negotiable Instruments Act of Washington. In *Edgar v. Haines*, 109 Ohio St. 159; 141 N. E. 837, the facts were that a negotiable promissory note was executed payable to Edgar and another,

each being entitled to a half interest therein. The note was secured by mortgage. Edgar assigned his half interest to Mayer and, as it afterwards appeared, was defrauded by his assignee. Mayer afterwards assigned his interest to another person, who in turn assigned it to a third. The two subsequent assignees paid value and were without notice of the fraud on Edgar. All these persons were parties to an action on the note and for the foreclosure of the mortgage. The court, after quoting section 8137 of the General Code of Ohio, which is the same as section 3423 of the Statutes of Washington, said:

If, therefore, it is attempted to transfer a negotiable instrument in such manner as to violate the provisions of section 8137, General Code, it does not operate as a negotiation of a negotiable instrument. It does not follow, however, that the transfer of only a part of the amount payable is a void act, or that the transferee acquires nothing by the transaction. It cannot be doubted that any legislative attempt to deny the right of a holder of a part interest in a negotiable instrument to sell and transfer such interest would be unconstitutional. As a general rule, any person may sell and transfer property, or any interest therein, under the inherent power to make contracts, all of which is recognized by the letter and the spirit of section 1 of the Ohio Bill of Rights. It is, of course, an exception to such general rule that the Legislature may limit such right on the ground of public policy, the best examples of which are champertous and usurious contracts, contracts in restraint of trade, and other agreements which need not be enumerated. It is likewise within the limits of legislative power to give to promissory notes and bills of exchange the attribute of negotiability, to place limitations thereon, and to take the same away under certain prescribed conditions. The Legislature would not, however, have the power to take away from a promissory note the force and effect of a contract, if it possesses all of the formal requisites and essential attributes of a contract. In the instant case, after the transfer of the part interest in the note, it still had all of the character and quality of a contract, and as such it could lawfully be transferred. We have no difficulty, therefore, in reaching the conclusion that Mayer and the subsequent transferees were holders of a nonnegotiable chose in action.

It is well settled that whatever may be the rights at law of an assignee of a part of a negotiable note or of any other chose in action, his rights are enforceable in equity. 8 C. J. 343; 5 C. J. 894; *Edgar* v. *Haines, supra.*

Here petitioners did not by a writing endorsed on the notes assign a part of them to the children and thus attempt to require the purchaser to pay a part of each note to each assignee. The purchaser did not have to split up his payments. As each note fell due, he paid the whole note to its holder, the bank. What petitioners did do was to transfer the notes intact to the bank together with the contract by which they assigned to each child a part of each note, and then authorized and directed the bank to collect the notes as they fell due and pay the proceeds and all interest paid thereon to them and to their children, in certain proportions. The functions of the bank under the contract were to a large extent those of a trustee. It held

a fund represented by the notes for the benefit of petitioners and their children, it agreed to carry into effect the contract, and it complied with its agreement. We are of the opinion that the contract was complete and vested in each child a present interest in each note. That the contract operated as of the date of its execution to convey a then present interest, is shown by its words and especially by the fact that each child was entitled to all the interest which pertained to his or her share.

This brings us to the question whether petitioners are taxable in the years involved on so much of the gain in each note as was attributable to each child's share. It is to be observed that the peculiar provisions of the various revenue acts relative to the taxation of the income of partnerships are not applicable to the instant proceedings. Cf. *Mitchel* v. *Bowers*, 15 Fed. (2d) 287. No partnership is involved. Neither is this a case where one who continued to be the owner of the property assigned future income arising therefrom as it might accrue. Cf. *Samuel V. Woods*, 5 B. T. A. 413. Petitioners had disposed of the land and of their interest in the notes to the extent of the assignment. Further, these proceedings do not fall within that class of cases where a corporation has leased its property and required that the rental be paid directly to the stockholders and where it has been held that the corporation was in receipt of income on the grounds that it continued to be the owner of the property from which the income was derived and that the corporate entity was to a certain extent disregarded. Cf. *Rensselaer & Saratoga R. R. Co.* v. *Irwin*, 249 Fed. 726, and *Blalock* v. *Georgia Ry. & Electric Co.*, 246 Fed. 387. Lastly, the doctrine of constructive receipt of income can not be applied, for the obvious reason that the income when collected was payable and during the taxable years was actually paid to the persons legally entitled thereto and to which neither petitioner had any right whatever. One can not be held to be in constructive receipt of that to which he is not entitled and which in fact belongs to another.

We now approach the vital question whether the petitioners by voluntarily but irrevocably assigning an interest in the notes, each of which contained a part of the gain realized upon the sale and by voluntarily returning their gain upon the deferred-payment basis, can escape taxation on so much of the gain as is contained in the parts of the notes assigned to the children. We repeat that in these proceedings there is not the slightest suspicion of tax evasion. It is also proper to point out that if petitioners had been advised of their rights with reference to income tax they could have conveyed, prior to the making of a binding contract of sale, to Frances and Jean their several tracts and thus have placed themselves, with respect to these portions, in the same position they now occupy as to the

tract of Roma. The sale of the 1,300-acre tract was made on the deferred-payment basis. Section 212(d) of the Revenue Act of 1926, which was made retroactive by section 1208, provides:

(d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

It seems to be the theory of respondent that when a deferred payment sale has been consummated the vendors are at once in receipt of income and that the only benefit conferred by section 212(d) is that it permits the vendors to return such income over the years during which the notes mature. This contention not only does violence to the words of the statute, but overlooks the purpose which Congress had in view when they enacted it. Prior to the date of its enactment, the Commissioner had been holding that where purchase money notes had no real market value they were not returnable as income, but while so holding as a matter of law, he very often determined that such notes had a value equal to cash, in cases where the initial payment was quite small. It was the purpose of Congress to deny to the Commissioner the right to place any value on such notes where the initial payment did not exceed one-fourth of the purchase price. See Report of Committee on Finance, 69th Cong., No. 52, p. 19. If unpaid purchase money notes had no real market at the date of delivery or during the taxable year in which the sale was consummated, they can in no sense be deemed income or to include income, since the receipt of that which has not such value can not be construed as the receipt of income. Congress has in effect now declared that when the initial payment does not exceed one-fourth of the purchase price, the unpaid notes do not possess market value. It follows that petitioners were not in receipt of income when they received the notes in question and when they gave them to their children. Nor do we perceive why petitioners should be liable for the tax on the parts of the notes transferred, any more than that their estates after their deaths should be liable for the tax on the gain arising from the sale. If petitioners are liable for the tax from

the date of the consummation of the sale, it would seem to follow that such liability could not be escaped by death.

Beyond all this we are confronted by the very words of the section.

The words of this provision are plain to the point of bluntness. It requires a taxpayer to return in any taxable year as income that proportion of the installment payments "actually received in that year," which the total profit realized or to be realized when payment is complete, bears to the total contract price. It is clear that if no installment payment is received in a taxable year, no gain is returnable or taxable in that year. This was the purpose of the provisions. We are to be controlled by the plain meaning of the words used and can not supply some recondite meaning which is not suggested by the words themselves or by the context. Thus it is said in *United States* v. *Merriam*, 263 U. S. 179:

> On behalf of the government it is urged that taxation is a practical matter and concerns itself with the substance of the thing upon which the tax is imposed rather than with legal forms or expressions. But in statutes levying taxes the literal meaning of the words employed is most important for such statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer. *Gould* v. *Gould*, 245 U. S. 151, 153. The rule is stated by Lord Cairns in *Partington* v. *Attorney General*, L. R. 4 H. L. 100, 122;
>
> "I am not at all sure that in a case of this kind—a fiscal case—form is not amply sufficient; because, as I understand the principle of all fiscal legislation, it is this: If the person sought to be taxed comes within the letter of the law, he must be taxed, however great the hardship may appear to the judicial mind to be. On the other hand, if the crown, seeking to recover the tax, cannot bring the subject within the letter of the law, the subject is free, however apparently within the spirit of the law the case might otherwise appear to be. In other words, if there be admissible in any statute what is called an equitable construction, certainly such a construction is not admissible in a taxing statute, where you can simply adhere to the words of the statute."
>
> And see *Eidman* v. *Martinez*, 184 U. S. 578, 583.

See also *Shwab* v. *Doyle*, 258 U. S. 529, and *United States* v. *Field*, 255 U. S. 257.

Petitioners did not receive during the taxable years the proceeds of any part of the notes assigned to Jean and Frances. None of it passed through their hands. What is more, they were not entitled to any portion of the part assigned. Since they did not " actually receive " the portions of Jean and Frances and since these portions include the part of the gains sought to be taxed, it follows under the plain words of the statute they can not be taxed thereon. The fact that this results from the voluntary return of this gain on the deferred-payment basis does not alter the case. We can not read into the statute words which are not there. In *John S. Gullborg*, 5 B. T. A. 628, the same contention was urged that is presented in these pro-

ceedings, and there we held that all the gain arising from a sale on the deferred-payment plan was taxable to the assignor on the ground that the taxpayer had not relinquished his interest to the entire proceeds of the sale. We concluded our opinion as follows:

> We are of opinion from the entire record that the petitioner did not by the assignment part absolutely with his right, title, and interest in the unpaid installments provided in the sales agreement, and that the Commissioner correctly held that whatever gain resulted from the payments made to petitioner during the taxable years was income to him.

Cf. *O'Malley-Keyes* v. *Eaton*, 24 Fed. (2d) 436; *Young* v. *Gnichtel*, 28 Fed. (2d) 789; *James F. Foster*, 13 B. T. A. 496; *Edith H. Blaney*, 13 B. T. A. 1315; and *J. V. Ledig*, 15 B. T. A. 124.

These conclusions are confirmed by the action of Congress in inserting section 44(d) into the Revenue Act of 1928. That provision reads:

> SEC. 44. INSTALLMENT BASIS.
>
> \*          \*          \*          \*          \*          \*          \*
>
> (d) *Gain or loss upon disposition of installment obligations.*—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full.

In reporting the above provision, the Committee on Finance of the Senate, and the Committee on Ways and Means of the House of Representatives, in Reports 960 and 2, 70th Cong., said at pp. 24 and 16:

> *Gain or loss upon disposition of installment obligations.*—Subsection (d) contains new provisions of law to prevent evasion of taxes in connection with the transmission of installment obligations upon death, their distribution by way of liquidating or other dividends, or their disposition by way of gift, or in connection with similar transactions. The situations above specified ordinarily do not give rise to gain and yet at the same time it is urged that they permit the recipient to obtain a greatly increased basis in his hands for the property received, except in the case of gifts. It therefore seems desirable to clarify the matter. The installment basis accords the taxpayer the privilege of deferring the reporting at the time of sale of the gain realized, until such time as the deferred cash payments are made. To prevent the evasion the subsection terminates the privilege of longer deferring the profit if the seller at any time transmits, distributes, or disposes of the installment obligations and compels the seller at that time to report the deferred profits. The subsection also modifies the general rule provided in subsection (a) for the ascertainment of the percentage of profit in the deferred payments, in those cases in which the

obligations are satisfied at other than their face value or are sold or exchanged. The modification permits a compensating reduction in the percentage of profit in case the obligations are satisfied at less than their face value, or are sold or exchanged at less than face value.

It is to be noted that this report states that, under the law as it existed at the time the report was made, the recipient of such notes, except in the case of a gift, has a new basis upon which to compute his income. The reason donees of gifts are excepted is to be found in section 202(a) of the Revenue Act of 1921, and section 204(a) of the Revenue Acts of 1924 and 1926. We have not the donees before us and therefore are not concerned with the question of their liability. It is sufficient to point out that Congress recognized the fact that under the then existing revenue acts the donor escaped liability by making a gift of such notes and sought to stop the practice permitted by section 212(d) of the Revenue Act of 1926.

By this decision we do not cast doubt on many of our decisions that where the taxpayer retains his interest, ownership or control of the property from which the income is derived that an assignment of the income would not relieve him from the tax. But in the case at bar we have an irrevocable assignment of the corpus to take immediate effect. Petitioners disposed of their property to the extent of said assignment and it seems to us of no determining effect that possibly wrapped up in such property there may have resulted income to petitioners if they had been the owner of the part of the notes when they matured in future years. Cf. *People ex rel. Brewster* v. *Wendell*, 188 N. Y. S. 510.

A transaction such as in the instant case must be carefully scrutinized, but when the clear bona fides is established, as here, we think the respondent erred in treating as the income of petitioners the sums that pursuant to the instrument of assignment became and were the property of some one else when so received.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

STERNHAGEN, TRAMMELL, and MURDOCK dissent.

---

PHILLIPS: There is one consideration to which I give some weight which is not mentioned in the prevailing opinion. While our decision seems on first consideration to permit income to escape taxation, I do not conceive that this is so. The income represented by the note would appear to be taxable to the donee. Section 202 (a) (2), Revenue Act of 1921; *Taft* v. *Bowers*, 278 U. S. 470. To hold the petitioner liable for tax upon income which is taxable to the donee would result in double taxation of the same income. The presumption is that no such result was intended by the law.

With these observations, I concur in the result reached.