JOHN A. NELSON COMPANY (FORMERLY KNOWN AS ROCKFORD MILLING MACHINE COMPANY), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 32986, 44700. Promulgated November 30, 1931.

*F. E. Seidman, C. P. A.*, and *J. S. Seidman, Esq.*, for the petitioner.
*Brooks Fullerton, Esq.*, and *John D. Kiley, Esq.*, for the respondent.

OPINION.

LOVE: The direct issues are three:

1. Whether the amounts paid to the Sundstrands (who were two inventors) for their work in the inception and development of patents, are deductible as expenses, or whether they should be capitalized as a part of the cost of such patents.

2. Whether collections from sales made prior to 1924 on the so-called accrual basis may be included in income for 1924, 1925 or 1926, when the collections were made, during which years petitioner was reporting on the installment basis.

3. Whether taxable gain was realized in 1926, when a reorganization occurred, from a transfer of installment accounts maturing in subsequent years.

To these direct issues, respondent adds the query whether, for 1924 and 1925, the evidence in the record is sufficient to enable the Board to redetermine petitioner's correct tax liability for those years.

Respondent contends in respect of the years 1924 and 1925, that petitioner has not adduced evidence showing its income for those years (a) as reported on returns, (b) with changes made by the Commissioner, and (c) as corrected by the Commissioner. Counsel for respondent asserts that the determination of the Commissioner is presumed to be correct, and that the burden of proof is on petitioner to show that the Commissioner is wrong, and that petitioner must show what its correct tax liability is.

To clear the way for the consideration of the other issues, we will first dispose of these contentions as applied to this case by denying them. There is no dispute between the parties in regard to the above matters and they are not at issue. The only things that the Board is undertaking to determine in the first instance are the questions at issue. Those once determined by the Board, the " redetermination "

of the deficiency and the settlement follow under Rule 50 of the Board's rules of practice, which rule, among other things, is intended to and does provide for just such situations as we have here. It would be supererogatory for the Board to consider matters about which the parties are not in dispute. We conceive that we shall have no difficulty, occasioned by lack of evidence, in reaching conclusions in regard to the issues which are before us.

The first of these, as we have set them out above, is in regard to the amounts paid to the Sundstrands for their work on the patents.

On December 31, 1923, a written agreement was entered into by and between Gustaf David Sundstrand and Oscar J. Sundstrand, parties of the first part, and petitioner (then known as the Rockford Milling Machine Company), party of the second part, by which provision was made in accordance with a preexisting "oral understanding," for the assignment to petitioner which had been made by them prior to the date of the written agreement, of "the entire right, title and interest" in eighteen applications for letters patent of the United States, the latest bearing date of January 9, 1922, and eight applications for foreign letters patent, the latest, according to the record, being dated January 8, 1921, the assignment "including foreign patent rights" not otherwise specified.

In accordance with the provisions of this agreement and the other facts as we have found them, we hold that these disbursements in 1924, 1925 and 1926, of "five per centum (5%) of the net profits of the company" for each year immediately preceding that in which the distribution was made, were capital expenditures for property acquired, and as such property, subject to depreciation over the 17-year life of each patent concerned. This rule has been consistently followed by the Board. See *Individual Towel & Cabinet Service Co.*, 5 B. T. A. 158, and cases therein cited. See also *Stephens-Adamson Manufacturing Co.*, 16 B. T. A. 41; affd., 51 Fed. (2d) 681. On this issue the Commissioner is sustained.

The second question for our determination is the inclusion in taxable income for the years 1924, 1925 and 1926, of collections on installment sales made prior to 1924.

From 1918 to 1926, inclusive, petitioner sold personal property on the installment plan. For 1918 to 1923, inclusive, petitioner reported its income on the accrual basis. In its original return for 1924 petitioner changed its method of reporting income to the installment basis. For 1925 and 1926, also, its returns were prepared on the installment basis. There is no question raised as to the propriety of making the returns on the installment basis, the change from the accrual to the installment basis being authorized by

section 212 (d) of the Revenue Act of 1926, as that section was made retroactive by section 1208 of the same act.

In accordance with the statute, and the regulations thereunder (article 42 of Regulations 69), petitioner made application for and obtained a refund, for the years 1918 to 1923, inclusive, for the excess tax as returned on the accrual basis and paid for those years, above the tax as shown by recomputation on the installment basis.

In reporting income received for 1924 petitioner, in its return, excluded as being derived from installment sales made prior to January 1, 1924, receipts amounting to $294,452.65. The Commissioner increased petitioner's reported income by that amount.

In reporting income received for 1925 petitioner, in its return, excluded as being derived from installment sales made prior to January 1, 1924, receipts amounting to $29,009.86. The Commissioner increased petitioner's reported income by that amount.

In reporting income for 1926 petitioner, in its return, included receipts derived from installment sales made prior to January 1, 1924, in the amount of $6,864.68. The Commissioner has made no adjustment in connection with that amount.

Petitioner contends that the Commissioner's action in thus increasing its reported income for 1924 and for 1925, and the Commissioner's failure to decrease its reported income for 1926, are in conflict with section 705 of the Revenue Act of 1928, which follows:

SEC. 705. INSTALLMENT SALES—RETROACTIVE.

(a) If any taxpayer by an original return made prior to February 26, 1926, changed the method of reporting his net income for the taxable year 1924 or any prior taxable year to the installment basis, then, if his income for such year is properly to be computed on the installment basis—

(1) No refund or credit of income, war-profits, or excess-profits taxes for the year in respect of which the change is made or any subsequent year shall be made or allowed, unless the taxpayer has overpaid his taxes for such year, computed by including, in computing income, amounts received during such year on account of sales or other dispositions of property made in any prior year; and

(2) No deficiency shall be determined or found in respect of any such taxes unless the taxpayer has underpaid his taxes for such year, computed by excluding, in computing income, amounts received during such year on account of sales or other dispositions of property made in any year prior to the year in respect of which the change was made.

(b) Nothing in this section shall be construed as in any manner modifying section 607, 608, 609 or 610 of this Act, relating to the effect of the running of the statute of limitations.

The provisions of this section apply to all the years in controversy. We are in substantial accord with the opinion of the General Counsel of the Bureau of Internal Revenue as it is expressed in his memorandum 8144 (recorded in C. B. IX–1, p. 173).

In the course of his memorandum, the General Counsel analyzes the somewhat involved syntax of section 705, and expresses the opinion, in conclusion, that:

\* \* \* where a taxpayer properly qualifies under section 705 of the Revenue Act of 1928, in determining deficiencies against the taxpayer there should be excluded in computing income for the year of change to the installment basis and for all subsequent years, amounts received on account of sales or exchanges of property made in years prior to the year of change, and that such procedure should be followed not only for the years involved \* \* \* but also for years covered by the Revenue Act of 1928. \* \* \*

Respondent does not apply this opinion of the General Counsel in the instant case. He contends that section 705, quoted, *supra*, was enacted solely as a relief measure from double taxation which might result from the operation of the law as construed by the Board in *Blum's, Inc.*, 7 B. T. A. 737, and that petitioner, having received refunds for 1918 to 1923, inclusive, as provided in section 1208 of the Revenue Act of 1926, is not a taxpayer who " properly qualifies under section 705 of the Revenue Act of 1928." Quoting respondent, he says that:

Since petitioner, on account of the refund, has not been taxed on the profits which are included in the installment payments on sales of prior years collected in 1924, 1925 and 1926, the action of the Commissioner in including those profits in income for those years does not subject the petitioner to double taxation. Petitioner is not within the purview of the relief provision of section 705 of the 1928 Act and the Commissioner's action in taxing the profits as received was correct. \* \* \* The petitioner having two methods of relief available has taken full advantage of one, and has not been subjected to double taxation. Now the petitioner wishes to invoke the other method in his favor and to escape taxation on income which in equity and good conscience should be taxed. Such was not the intent of Congress \* \* \*.

That such is the precise result that will ensue, if we support petitioner's contentions, is obvious, and it may even be admitted that the entire probability supports respondent's contention that such was *not* the intent of Congress, but where the mandate of a statute is clear and free from ambiguity, there are no sufficient grounds for this Board to disregard the statutory provisions merely because in a particular case the application of the statute appears to result in an inequitable or incongruous situation. There is nothing in the statute to indicate that section 705 is purely a " relief measure " available only to those taxpayers who have not received refunds under the other provisions of earlier acts. We are not here concerned whether " in equity or good conscience " these amounts in question should be taxed. In our judgment the unmistakable mandate of the statute is that they shall not be taxed, and we so hold.

The two preceding issues are raised in all three of the taxable years in question. The third issue applies only to the last of them,

the year 1926. On December 31 of that year petitioner was a party to a reorganization and, pursuant to the reorganization plan, it transferred substantially all of its properties to the Sundstrand Corporation of Delaware in exchange for 14,060 shares of the preferred stock of the Delaware corporation and $2,000,000 cash. Petitioner immediately used part of the cash so received to retire its own preferred stock and, still pursuant to the reorganization plan, immediately distributed to its own stockholders the preferred stock of the Delaware corporation, and the remainder of the cash. As of the same date (December 31, 1926) petitioner's books of account showed a reserve for " Unrealized Profit " on installment sales in the amount of $322,980.29. In arriving at the proposed deficiency here in question, respondent added this amount to petitioner's income, on the ground that when petitioner exchanged its assets for stock and cash, it collected 100 per cent of the total outstanding installment accounts receivable. Included in the $322,980.29 is an amount of $1,640.49 representing uncollected profits on sales made prior to 1924, but such $1,640.49 is not included in the amount of $6,864.68 referred to above as profits received by petitioner during 1926 on account of installment sales made prior to 1924.

The question raised is whether the amount of $322,980.29 or any part thereof is income to petitioner in 1926.

In one form or another, this question has been before the Board upon earlier occasions, and we have considered it as it was presented in the several cases decided. See *Packard Cleveland Motor Co.*, 14 B. T. A. 118; *R. L. Brown*, 14 B. T. A. 609; *Wallace Huntington*, 15 B. T. A. 851; *M. A. Milan*, 16 B. T. A. 1112; *Charles F. Meagher*, 20 B. T. A. 68; *Lucius H. Elmer*, 22 B. T. A. 224; and *Virginia Beach Golf Course Annex Corporation*, 23 B. T. A. 1169.

The pertinent parts of the 1926 Act, which governs here, are:

SEC. 203 (b) (3) No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization * * *

 *          *          *          *          *          *          *

(e) If an exchange would be within the provisions of paragraph (3) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange, * * *

We have closely scrutinized the facts in the case at bar, the act relating thereto, and the earlier decisions of the Board. The case most closely paralleling the one now before us is *Charles F. Meagher*,

*supra.* The *Meagher* case fell under the provisions of the Revenue Act of 1921, but the Act of 1926, applicable here, though it differs from the earlier act in the phraseology of some of its provisions, differs in no material respect therefrom in the effect of the sections above quoted, as we read and apply them, nor does respondent contend that it does. The 1926 Act is even more definite and free from ambiguity than the Act of 1921. In the *Meagher* case we said:

We can but conclude that the transfer by petitioner of these installment obligations in a transaction which, under existing law is held not to result in taxable gain, can not be considered as a present realization of income therefrom, and this conclusion is further strengthened by the fact that the determining of a taxable gain from such a transaction is first provided for by the Revenue Act of 1928 in section 44 (d), * * *

This section is not by its terms made retroactive and, as we pointed out in *Wallace Huntington, supra,* the insertion of this new provision in that act was clearly indicated by the report of the Committee on Finance of the Senate, and the Committee on Ways and Means of the House of Representatives, to be for the purpose of changing the condition existing under the prior revenue acts, including the Revenue Act of 1921 [and the Revenue Act of 1926 here involved, under which it was possible to dispose of installment obligations in a transfer not giving rise to loss or gain and thereby evade tax liability in respect to the income which would otherwise be represented by them.

We are controlled by the *Meagher* case from which we have just quoted, and by *Wallace Huntington, supra.* Accordingly, we hold that no taxable profit was realized by petitioner when in 1926 it transferred to the Sundstrand Corporation of Delaware substantially all of its properties (including installment accounts receivable) in exchange for 14,060 shares of the preferred stock of the Delaware corporation, and $2,000,000 in cash.

The amount of $1,640.49 representing uncollected profits on sales made prior to 1924, included in the total amount of $322,980.29, is exempt from taxation under our decision on the second issue herein considered.

*Judgment will be entered under Rule 50.*