LUCIUS H. ELMER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26074.   Promulgated February 19, 1931.

*Hugh Satterlee, Esq.*, for the petitioner.
*John E. Marshall, Esq.*, for the respondent.

OPINION.

SMITH: The only issue raised in this proceeding is whether the petitioner is entitled to report his income in 1922 and 1923 upon the installment sales basis as provided in section 212(d) of the Revenue Act of 1926. This section of the statute applies retroactively to the years under consideration and reads as follows:

(d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made. [For retroactive application of this provision see section 1208.]

Counsel for the petitioner, while admitting the apparent adverse effect of our decision in *Packard Cleveland Motor Co.*, 14 B. T. A. 118, makes the argument in his brief, first, that the facts in the instant case are distinguishable from those in *Packard Cleveland Motor Co.*, *supra*, and, second, that the Board reached a wrong conclusion in its decision in that case.

Briefly, the facts in the *Packard Cleveland Motor Co.* case were that the taxpayer sold automobile trucks, in the first instance on the installment plan, receiving on each sale a down payment of 25 per cent and a promissory note secured by a chattel mortgage for the balance of the purchase price, which was payable in ten or twelve monthly installments. Upon completion of a sale it immediately "sold, assigned, and transferred" the note and mortgage over to a finance company, receiving the full unpaid amount of the purchase price and guaranteeing payment of the amount of the note by the buyer. Whenever a purchaser defaulted in his payments on the note the seller repossessed the automobile truck and repaid the

finance company the balance due on the note. We said in that case that:

> * * * Under this set of facts we are convinced that upon the receipt of the full remaining purchase price of the truck or car petitioner received income in that amount. *Grace T. Mytinger*, 4 B. T. A. 896. Though the transaction may have been an installment sale originally, when the Commercial Company paid the petitioner the full balance of the account and assumed the obligation of collecting from the purchaser, so far as petitioner was concerned, the sale became a closed transaction. The Commercial Company did not act as the petitioner's agent in collecting. It had bought all of petitioner's rights under the note and mortgage and thereafter acted in its own sole behalf.
>
> In support of its position petitioner points to the fact that it guaranteed payment of the notes and might be, and in a considerable number of instances was, obliged to respond to the Commercial Company as an endorser on the paper. We do not deem this fact to be of controlling weight. Though the possibility of default was in contemplation it was not established as a surety when the notes were sold and, in fact, every reasonable precaution was taken by petitioner before making a sale to forfend against such a contingency. The treatment of the sale on petitioner's books argues strongly against petitioner's contention.

The principal point upon which the petitioner seeks to distinguish the cases is that while in the *Packard Cleveland Motor Co.* case we found that there was an outright sale of the purchase notes to the finance company, in the instant case, it is contended, the petitioner merely assigned the notes over to the Finance Company as collateral for loans. We think, however, that the evidence does not establish this point. The so-called working agreement between the petitioner and the Finance Company said to be contained in the above letter of November 28, 1922, is far from complete. It makes no provision whatever for the actual exchange of the purchase notes and cash between the petitioner and the Finance Company, which is really the crux of the matter under consideration. Paragraph three of the letter reads:

> Third: It must be agreed, on your part, to forward us a Delinquent List each week on any delinquent owners that you might have, in which case we will guarantee to return to you immediately the amount due on any cars that you might repossess *where you have loaned us money on same.* (Italics supplied.)

It does not follow, however, that the transactions which actually took place were "loans" because referred to as such in the informal agreement. The acts of the parties indicate a different result. The petitioner upon securing a sale contract executed with the buyer a conditional sale agreement receiving a down payment of $50 and a promissory note for the balance, payable in weekly or monthly

installments over a period of a year or longer. The sale agreement specified that title to the automobile would remain in the seller until the purchase price was fully paid up. The petitioner would then immediately deliver over the note, endorsed in blank, and the sale contract to the Finance Company, receiving from it then or within a few days the full amount of the face value of the note. If the buyer defaulted in his payments on the note, then the petitioner repossessed the automobile and repaid to the Finance Company the unpaid balance of the note. The sale agreements were transferred to the Finance Company in the following words:

For value received, the undersigned, being the within named dealer, hereby *sells, assigns, and transfers* unto The Hartford Automobile Finance Company, of Hartford, Conn., all ——— right, title, and interest in and to the within conditional *sale and the debt and automobile* therein described * * * (Italics supplied.)

This course of procedure was regularly and consistently followed. We think that the acts of the parties negative any intent on the part of the parties merely to provide for a loan from the Finance Company to the petitioner, with the sale agreements and notes posted as collateral. In view of these facts, we think that the petitioner has failed to distinguish the case at bar from the *Packard Cleveland Motor Co.* case. In both cases the result was the same for all practical purposes. The dealer in each instance received during the taxable year of the sale the full amount of the sale price and parted with all interest in the sale except as an endorser on the buyer's note. In this proceeding, the evidence, less favorably to petitioner's cause, does not show that the buyers defaulted on a substantial percentage of their payments as was true in the *Packard Cleveland Motor Co.* case.

It might be pointed out, too, that the evidence fails to show for what part of 1922 the Commercial Credit Company handled the purchase notes for the petitioner, or the details of the transactions between the petitioner and that company.

After careful consideration of the petitioner's argument herein, we are unconvinced that our conclusion in the *Packard Cleveland Motor Co.* case fails properly to apply the applicable provisions of the taxing statute. It is our opinion that the method of computation used by the respondent correctly reflects the petitioner's taxable income for the years under review. The evidence shows errors in the respondent's computation with respect to the allocation of unreported profits for each of the years, which should be adjusted in accordance with the above found facts.

*Judgment will be entered under Rule 50.*