IOWA GUARANTEE MORTGAGE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43247. Promulgated May 31, 1933.

*Clyde B. Charlton, Esq.*, for the petitioner.
*William E. Davis, Esq.*, for the respondent.

214

OPINION.

LANSDON: The petitioner's major contention is that, in the circumstances as set out in our findings of fact, it properly changed its method of accounting for and reporting income from receipts on deferred payment contracts at January 1, 1924, and that thereafter

it was entitled to report such income on the installment basis. If this contention is sound it follows that if it then comes within the provisions of section 705 (a) (2) of the Revenue Act of 1928 [1] no deficiency can be determined against it in respect of the amount of $64,679.96 which was reported as taxable income in a prior year and income tax paid thereon. The respondent has determined that the petitioner is a money lender and is not a dealer in personal property and so is not entitled to the benefit of any of the statutory provisions relating to sales on the installment basis.

The Board has heretofore held in many cases that where the owner of installment contracts realizes his profits therein by sale to another party he loses his right to report income on the installment basis. *Grace T. Mytinger*, 4 B.T.A. 896; *E. E. Chapman*, 19 B.T.A. 878; *Alworth-Washburn Co.*, 25 B.T.A. 140; *Max B. Shubin*, 25 B.T.A. 792. This principle was specifically applied to automobile dealers who sell their installment contracts to finance companies in *Packard Cleveland Motor Co.*, 14 B.T.A. 118; and *Lucius H. Elmer*, 22 B.T.A. 224. It is clear, therefore, that under these cited decisions, an automobile dealer in the circumstances herein loses his right to report his income on the installment basis when he sells such contracts to a finance company. Whether the purchaser acquires an interest in the contract and the automobile that makes him a seller of personal property on the installment plan remains to be considered.

Prior to the effective date of the Revenue Act of 1926, there was no express statutory authority for reporting income from installment sales as and when realized. Early in the history of the present system of income taxation profits from such transactions were returned on the accrual basis, but as early as 1919 in Regulations 45, article 42, the Commissioner authorized returns on the installment basis and later incorporated practically identical language in Regulations 45, 62 and 69 interpreting the Revenue Acts of 1921, 1924 and 1926. In 1926 the Congress for the first time included in the Revenue Act of that year a provision expressly authorizing the report of income from installment sales as and when realized in the following language:

---

[1] SEC. 705. (a) If any taxpayer by an original return made prior to February 26, 1926, changed the method of reporting his net income for the taxable year 1924 or any prior taxable year to the installment basis, then, if his income for such year is properly to be computed on the installment basis—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(2) No deficiency shall be determined or found in respect of any such taxes unless the taxpayer has underpaid his taxes for such year, computed by excluding, in computing income, amounts received during such year on account of sales or other dispositions of property made in any year prior to the year in respect of which the change was made.

Sec. 212. (d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when payment is completed bears to the total contract price. \* \* \*

Section 1208 of the Revenue Act of 1926 provides as follows:

The provisions of subdivision (d) of section 212 shall be retroactively applied in computing income under the provisions of the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, the Revenue Act of 1921, or the Revenue Act of 1924, or any of such Acts as amended.

A change of accounting from the accrual to either the cash or the installment basis necessarily results in an overlapping period in which accruals theretofore made in one period become cash receipts in another. To relieve this situation in so far as it applies to dealers in personal property and real estate, Congress included section 705, heretofore set out in the margin of this report, in the Revenue Act of 1928. Certainly it was within the legislative power to make this provision broad enough to cover the situation of all taxpayers changing from the accrual to the cash basis, but Congress saw fit to limit the relief to a change from the accrual to the installment basis, probably because installment merchants and real estate dealers through their own organized efforts asked for such legislation in their own interests.

The petitioner is entitled to the relief sought in this proceeding if it is the seller of personal property on the installment plan. In our opinion it is not a merchant but is a money lender. It sells no automobiles except in the very few instances in which it is compelled to take over those upon which purchasers have defaulted in their payments. The record does not disclose the plan upon which such cars are disposed of, which is immaterial since the sale thereof is merely the disposition of property pledged as security for the loans made by the petitioner and therefore is only a minor incident of its business. It may be true, as argued by counsel, that petitioner acquires some sort of legal title to the automobiles covered by the contracts, but that title is similar to the rights acquired by a money lender in a mortgage or deed of trust made to secure payment of loans on real estate. The petitioner is not entitled to relief under the provisions of section 705 of the Revenue Act of 1928. On this issue the determination of the respondent is affirmed.

The inclusion of $64,679.96 in the petitioner's income for 1924 results in a net profit instead of a loss for that year. Accordingly, the claim for a net loss must be denied.

The parties have stipulated that " One-half of one per cent of the face amount of the purchasers' notes acquired is approximately the collection loss experienced by petitioner during the years 1920 to 1924, inclusive." Petitioner therefore contends that it should be allowed to include in a reserve for bad debts one half of one percent of the face value of the contracts purchased in the taxable year. Under the method of accounting which it adopted as of January 1, 1924, no income results from the purchase of contracts until the profit therefrom is realized in cash. Since there is no proof that collections were made in 1924 on any of the contracts acquired in that year, it is obvious that there is no income from which the amount claimed on account of bad debts can be deducted.

Reviewed by the Board.

*Decision will be entered under Rule 50.*