## MILLER SAW-TRIMMER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31820.   Promulgated July 12, 1935.

*Frank S. Bright, Esq.*, for the petitioner.
*E. C. Algire, Esq.*, for the respondent.

OPINION.

TRAMMELL: The issue here is whether petitioner is entitled, under the facts above set forth, to have its tax liability determined on the installment basis of reporting its income for the taxable years, under the provisions of sections 212 (d) and 1208 of the Revenue Act of 1926.[1] The facts were stipulated by the parties or established by undisputed testimony, and the question presented is purely one of law.

---

[1] SEC. 212. (d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable year in which the sale or other disposition is made.

SEC. 1208. The provisions of subdivision (d) of section 212 shall be retroactively applied in computing income under the provisions of the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, the Revenue Act of 1921, or the Revenue Act of 1924, or any of such Acts as amended. Any tax that has been paid under such Acts prior to the enactment of this Act, if in excess of the tax imposed by such Acts, as retroactively modified by this section, shall, subject to the statutory period of limitations properly applicable thereto, be credited or refunded to the taxpayer as provided in section 284.

During the taxable years the petitioner sold printing machinery on the installment plan, taking a small cash payment and four negotiable promissory notes for the agreed sale price, under the circumstances detailed in our findings of fact.

Petitioner contends that under those facts it is entitled to have its tax liability determined on the installment basis, according to the provisions of the quoted statute, while respondent asserts that petitioner is not entitled to such basis, but that in any event by converting the installment notes into cash petitioner received the entire profit from its sales in each year, and is taxable on the full amount thereof, whether or not the sales were originally made on the installment plan.

In *Packard Cleveland Motor Co.*, 14 B. T. A. 118, we held that where the taxpayer sold automobile trucks on a basis of 25 percent cash and the balance in deferred payment notes and immediately transferred the notes to a finance company for their face value, the entire profit should be reported as income in the year of sale, and that, while the sales may have been on the installment basis, they became closed transactions and income arose upon receipt from the finance company of the full purchase price. This decision, as well as our later decisions following it, was predicated upon the theory that the proceeds from the sales of the installment notes at face value effected realization of the taxpayer's entire profit on the original sales. *E. E. Chapman*, 19 B. T. A. 878; *Lucius H. Elmer*, 22 B. T. A. 224; affd. (C. C. A., 2d Cir.), 65 Fed. (2d) 568; *Duram Building Corporation*, 23 B. T. A. 796; reversed (C. C. A., 2d Cir.), 66 Fed. (2d) 253; *Alworth-Washburn Co.*, 25 B. T. A. 140; affd. (App. D. C.), 67 Fed. (2d) 694; *E. G. Robinson*, 28 B. T. A. 788; reversed (C. C. A., 9th Cir.), 73 Fed. (2d) 769.

In reversing our decisions in *Duram Building Corporation, supra*, and *E. G. Robinson, supra*, the courts took the view (1) that the taxpayer's privilege of reporting upon the installment basis depends upon the transaction between the taxpayer and the purchaser, and is not in any wise conditional upon any subsequent disposition that may be made by the taxpayer of the installment notes; and (2) that the transactions by which the purchase notes are sold, discounted or otherwise disposed of are separate and independent, and themselves form the basis for a return of profit or loss.

In both cases, however, the courts held in effect that while the original transactions constituted installment sales and the taxpayers were entitled to report their profits on that basis, nevertheless to the extent that the installment notes were sold or disposed of at face value during the taxable period, profit was realized from such transactions in amounts equal to the profit represented by the notes so

disposed of and must be included in the taxable income for that year. Accordingly, our decisions were reversed only to the extent of requiring that the profit represented by notes *not* sold or disposed of in the taxable period should be accounted for on the installment basis.

It would follow under the principle established by those decisions that where *all* the installment notes are disposed of at face value in the taxable year, such transactions give rise to profit in exactly the same amount as that derived from the original sale and represented by the installment notes.

In the case of *Duram Building Corporation, supra,* the court said:

Therefore, as we interpret section 212 (d), the privilege of reporting on the installment basis depends upon the transaction between the vendor and purchaser of the land during the taxable period; it is not made conditional upon what disposition the vendor may make of the purchaser's evidences of indebtedness by transactions with third parties during the taxable period in which the land was sold. Such transactions are separate and independent and will themselves be the basis for a return of profit or loss.

In the case of *E. G. Robinson, supra,* the court said:

* * * We * * * therefore hold that even though petitioner remained liable as guarantor on the notes transferred, the gain included in the installment notes [transferred] for the real estate at their face value should have been included in petitioner's income tax return for the year 1927.

Petitioner seeks to distinguish the case at bar from those above cited because of the fact that it remained contingently liable as endorser or guarantor on the notes, and because the notes were discounted or hypothecated for loans largely on the faith and credit of petitioner's principal stockholder, Nicola. This position, we think, is not well taken. More or less the same argument was advanced in some or all of the cited cases. The principle is well established that " a taxpayer should return income in the year in which it is received without regard to the fact that there may be claims against it not determinable until a subsequent year." *Alworth-Washburn Co.* v. *Helvering,* 67 Fed. (2d) 694, *supra,* citing *Burnet* v. *Sanford & Brooks Co.,* 282 U. S. 359; *Burnet* v. *Thompson Oil & Gas Co.,* 283 U. S. 301; *North American Oil Consolidated* v. *Burnet,* 286 U. S. 417. And in the *Alworth-Washburn Co.* and *Robinson* cases, *supra,* it was specifically held that the contingent liability of the taxpayers on the transferred installment notes did not prevent the profits realized from being taxed in the years of receipt.

The present case is distinguishable from those above cited only by the fact that the four-month notes discounted at the banks were reacquired by the petitioner on or before the due dates for the purpose of renewal by the acceptance of a new series of notes, which new notes were immediately discounted at the banks. However, there is nothing to show that there was any different legal relationship be-

tween the petitioner and the banks than in the case of ordinary discounted notes. The petitioner received in money the full face value of all the notes, and was secondarily liable thereon as endorser. It was legally liable to the banks with respect thereto only in the event the makers did not pay.

We think the distinction above referred to is insufficient to justify computation of the petitioner's tax liability on the installment basis. The first three notes of each series were treated as ordinary discounted notes. The fourth note of each series, being for the remaining balance of the purchase price, was taken up and a new series of notes by the same maker substituted therefor. This process was repeated until final payment was made by the purchaser. In our opinion this method of handling the notes was no different in any material respect from ordinary discounted notes.

Hence, we held that as to the installment notes discounted by petitioner, and in respect of which it thereby derived gain equal to the entire profit from its sales in each year, petitioner is not entitled to have its tax liability determined on the installment basis.

Petitioner further contends that, whatever may be the decision as to the " discounted " installment notes, it is in any event entitled to report on the installment basis in respect of the notes on which it obtained " loans."

Whether or not petitioner's contention on this point is sound, as a matter of law, it is unnecessary for us to decide here. Even if there be any legal distinction between loans and discounts materially affecting petitioner's tax liability, we can afford it no relief on that account for the reason that the record does not disclose what amount of profits was represented by the notes on which it obtained " loans " from the banks and which remained unpaid at the end of the taxable years. The parties have stipulated that:

Of these notes deposited * * * with the Chase National Bank during the respective years, a considerable and unascertainable number and face amount thereof was paid by the makers prior to the close of said years. There was also, in many instances, a renewal of the four months' notes by acceptance of a new series of notes, some of which were disposed of as set forth in paragraph 2 [discounted], and some of which were disposed of as set forth in this paragraph [deposited as collateral for loans] * * *.

As to those notes paid by the makers prior to the close of the respective years in which deposited as collateral for loans, or which were renewed by acceptance of a new series of notes which were thereupon discounted instead of being redeposited, petitioner received all of its profit in those years and is not entitled to the installment basis. And if we should hold that petitioner is entitled to report on the installment basis in respect of the notes deposited for loans and not paid by the makers or renewed and discounted during the taxable years, it is apparent that there is no basis for determin-

ing the number and face amount of such notes which remained as security for the payment of the "loans."

In the instant case, since the number and face amount of the notes deposited as security for loans which were paid or renewed and discounted prior to the close of the taxable years are not ascertainable, the facts necessary to establish what the true deficiency is are not susceptible of proof.

Conceding, for the sake of argument, that the respondent's determination is erroneous in part with respect to the installment notes deposited as collateral security for loans, to the extent that such notes were not paid or renewed and discounted during the taxable years, it is stipulated that a basis for apportionment is unascertainable. We are then left to find that the entire deficiency is due, or that no deficiency is due, with respect to the notes deposited as collateral for loans. We know that there is some deficiency with respect thereto, and hence we can not say that there is no deficiency. Yet the deficiency determined by the respondent may not be correct, in that it may, to some unascertainable extent, be excessive.

By order of May 3, 1935, this proceeding was set down for further hearing to enable the parties to submit further evidence to show the number and amount of notes deposited as collateral security which were paid during the respective taxable years, and on May 15, 1935, the parties filed a stipulation stating that it had been found that there is no evidence available tending to establish the facts in question. In this situation we uphold the deficiency. The fault lies more with the taxpayer than with the Commissioner. The Government should not be made to suffer because the taxpayer did not keep proper records to show its correct tax liability. On this principle, unexplained bank deposits are held taxable in the absence of proof of the actual net income. *Pincus Brecher*, 27 B. T. A. 1108; *Baron Brothers, Inc.*, 26 B. T. A. 304; *Robert Burd*, 19 B. T. A. 734; *Isadore Angel*, 18 B. T. A. 39; *I. Goldman*, 12 B. T. A. 874. And in *Renier Music House, Inc.*, 15 B. T. A. 241, we held that where a taxpayer failed to prove facts from which the true deficiency could be determined by the installment sales method, the Commissioner's determination by another method must stand.

In *Burnet* v. *Houston*, 283 U. S. 223, the Court said with respect to a situation somewhat similar to the instant case:

We can not agree that the impossibility of establishing the specific fact, made essential by the statute as a prerequisite to the allowance of a loss, justifies a decision for the taxpayer based upon a consideration only of the remaining factors which the statute contemplates. * * * The impossibility of proving a material fact upon which the right to relief depends simply leaves the claimant upon whom the burden rests with an unenforceable claim, a misfortune to be borne by him, as it must be borne in other cases, as the result of a failure of proof.

Respondent's action on the issue submitted for decision is approved.

The parties have stipulated that the consolidated net taxable income for the taxable years, computed on the accrual basis of accounting, is as set forth in the deficiency letter, which amounts will be reflected in the redetermination of the deficiencies.

In respect of the issue of special assessment, since it appears from the record that the parties agree that the petitioner is entitled to have its profits tax determined as provided in section 328 of the Revenue Act of 1918, the only issue is as to the correct amount thereof.

Reviewed by the Board.

*Further proceedings will be had under Rule 62 (d).*