Della Nickoll v. Commissioner. Gerald Nickoll v. Commissioner.
Nickoll v. Commissioner
Docket Nos. 26206, 26207.
United States Tax Court
1951 Tax Ct. Memo LEXIS 105; 10 T.C.M. (CCH) 861; T.C.M. (RIA) 51273; September 11, 1951
Maurice Weinstein, Esq., 176 W. Wisconsin Ave., Milwaukee, Wis., for the petitioners. William Schwerdtfeger, Esq., and John D. Kiley, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings, consolidated for hearing, involve income tax deficiencies as follows: Della
Gerald
Year
Nickoll
Nickoll
1944
$3,712.00
$1,647.67
1945
1,570.27
1946
835.34
389.50 The only question in issue is whether a partnership engaged in the retail clothing *106 business in which petitioners each owned an interest is entitled to report income from installment sales on the installment basis under section 44 (a), Internal Revenue Code, or whether the partnership sold or assigned its accounts to a finance company, so as to realize income on such assignments under section 44 (d), Internal Revenue Code. The facts have been stipulated in part and several additional issues raised in the pleadings have been settled, as set out in the written stipulations. Findings of Fact The stipulated facts are found as set out in the stipulations. The petitioners are husband and wife and are residents of Milwaukee, Wisconsin. They filed their returns with the collector of internal revenue in Milwaukee. During the taxable years involved petitioners were members of a partnership, Milwaukee Cloak and Suit Company, engaged in the retail clothing business. Della Nickoll owned a 20 per cent and Gerald Nickoll a 5 per cent interest. About 90 per cent of the partnership's sales were installment sales and the remainder were cash. On the installment sales the purchasers were allowed from 6 to 24 months to pay for their *107 purchases. Lacking sufficient capital, the partnership made an arrangement for obtaining its necessary operating funds from a finance company, Civic Finance Corporation of Wisconsin. This company, hereinafter referred to as the finance company, had been organized by Gerald Nicholl who served as its president. It was engaged in the business of financing retail and industrial concerns with accounts receivable. It entered into a written contract with the partnership whereby the partnership agreed to "sell, assign, transfer to the Finance Company, all of its existing and future accounts receivable" at a discount of 3 1/2 per cent. The accounts were to be turned over to the finance company at the close of each day and payments equal to 75 per cent of the purchase price were to be made to the partnership on the first and sixteenth of each month. The remaining 25 per cent of such accounts was to be credited to the partnership in the finance company's books and carried in a reserve account. The credit balance in the reserve account was to be paid to the partnership periodically. The partnership agreed to repurchase any defaulted accounts after a specific period and one notice from the finance *108 company. The agreement contained, among others, the following provisions: "Retailer [partnership] also agrees that it will execute from time to time all instruments which may be necessary or convenient to the Finance Company in order to better evidence the ownership of such accounts and agrees that any and all sums collected by the Retailer upon such accounts, including all down payments, partial payments, installment payments or otherwise, shall be held by the Retailer in trust for the Finance Company separate and apart from all other monies or funds and shall be remitted and delivered to the Finance Company daily. * * *
"After purchase of any accounts by the Finance Company, the proceeds thereof shall be the sole property of the Finance Company and, in the event payments on the said accounts shall be made by the debtors to the Retailer, the Retailer shall segregate such funds and under no circumstances mingle them with his own funds and shall forthwith deliver to the Finance Company all funds so collected by it; it being understood and agreed that all such funds, while in the possession of the Retailer, shall be considered a trust fund for the sole use and benefit of the *109 Finance Company." The partnership's installment sales were all made on open account. Its vendees did not execute any mortgages or sales contracts or give any writing evidencing their indebtedness to the partnership. They merely signed sales slips showing the purchase and the payments due thereon. The sales slips were retained in the partnership's files until the accounts were closed. The partnership, therefore, did not transfer any written evidence of the sales to the finance company other than the recorded accounts. After the assignments the partnership continued to collect all of the deferred payments and deposit them daily to the credit of the finance company. The finance company made no investigation of the responsibility of the partnership's customers. It is stipulated by the parties that the only remaining issue is the treatment to be accorded the installment sales of the partnership, and that if the Court should sustain respondent's determination on this issue petitioner's distributive share of the net income of the partnership would be as follows: Della
Gerald
Year
Nickoll
Nickoll
1944
$5,922.90
$1,480.72
1945
3,798.43
949.60
1946
4,464.99
1,116.25
*110 The net income of the partnership as reported in its fiduciary returns for 1944, 1945, and 1946 and as adjusted by the respondent was as follows: Year
Reported
Adjusted
1944
$ 936.96
$30,404.88
1945
16,564.39
20,505.42
1946
11,297.86
23,192.19
The partnership reported its income from its installment sales on the installment basis under section 44 (a). The respondent has determined that the partnership realized income in each year on the sale or assignment of its installment accounts to the finance company. These adjustments resulted in increases in partnership income amounting to $27,366.64 in 1944, $2,247.36 in 1945, and $7,148.22 in 1946. Opinion LEMIRE, Judge: The sole issue involved in these proceedings, other than those settled by stipulation, is whether the partnership is entitled to report its income from the sales of merchandise on the installment basis under section 44 (a) or whether, as respondent has determined, the assignment of the installment accounts to the finance company resulted in a realization of income to the partnership under section 44 (d)[1]
*111 Petitioners contend that the partnership did not sell or otherwise dispose of its installment accounts but merely pledged them with the finance company as collateral for loans. The evidence, we think, fails to bear out this contention. The written contract between the partnership and the finance company strongly supports respondent's contention that the accounts were all assigned outright to the finance company. It provides in the beginning that "The Retailer [partnership] does agree to sell, assign, transfer to the Finance Company, all of its existing and future accounts receivable." Throughout the agreement there are other similar expressions, such as: "The purchase price of each such account shall be * * *. * * *
"In the event the Finance Company ceases to buy accounts * * *. * * *
"After purchase of any accounts by the Finance Company, the proceeds thereof shall be the sole property of the Finance Company * * *." (Italics supplied) There is nothing in the written agreement to indicate that the parties intended that the accounts should be merely pledged to the finance company as security for loans. No notes were given by the partnership and the agreement makes *112 no mention of any such loans. In his testimony petitioner Gerald Nickoll stated that the finance company "bought the accounts" and "discounted every sale, which ran into thousands of accounts." In his opening statement counsel for petitioners explained that: "* * * The finance company insisted that the accounts be sold to them outright with this agreement because in the opinion of their attorney, that is, the finance company's attorney, the finance company would be in a better position in case of any financial difficulties that the Milwaukee Cloak and Suit Company would get into at any time." The respondent cites a number of cases in support of his position, including Packard Cleveland Motor Co., 14 B.T.A. 118; Thomas Goggan & Bro., 45 B.T.A. 218; Elmer v. Commissioner, 65 Fed. (2d) 568; and Alworth-Washburn Co. v. Helvering, 67 Fed. (2d) 694. The Goggan case bears, perhaps, the closest factual resemblance to the instant case. There, the taxpayer sold automobiles and electric refrigerators on installment contracts and assigned the accounts to finance companies for cash or credit equal to their face amount, less certain finance *113 charges and "hold-backs." We held that the assignment of the installment accounts resulted in actual gain under section 44 (d). We said: "* * * In all instances the petitioner realized in cash or its equivalent all or a substantial portion of the sale price of the article sold at the time when the sale contract was turned over to the finance company. This is enough, we think, to require the inclusion in the gross income of each year of the profits represented in such cash receipts. * * *" As to the application of the rule of the Goggan case here, petitioners state in their brief: "* * * We shall not attempt to distinguish or differentiate the Goggan case from the case at bar, although there is sufficient difference between the facts in this case and the Goggan case to so do. In the Goggan's case the accounts receivable assigned were secured by chattel mortgages upon substantial chattels such as cars and pianos, while in the instant case there is no security on the accounts and the credit was extended merely on open accounts. "We respectfully urge that the Goggan decision should not be used as a precedent or even considered. With due respect to this Court it is our considered *114 opinion that the decision in the Goggan case is counter to the spirit, intent, and purpose of both Section 44 (a) I.R.C. and Section 44 (d) I.R.C. and its effect should be reversed." We think that the construction of section 44 (d) embodied in the Goggan case is a fair and reasonable one and must be applied here. The respondent is therefore sustained on this issue. In the computation to be made under Rule 50 proper adjustment for the deduction of medical expenses will be made in docket number 26206, in accordance with the stipulation in that proceeding. Decisions will be entered under Rule 50. Footnotes
1. SEC. 44. INSTALLMENT BASIS. * * *
(d) Gain or Loss Upon Disposition of Installment Obligations. - If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange - the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange - the fair market value of the obligation at the time of such distribution, transmission, or disposition. Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received. * * *↩